UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

JOHN WESLEY KIMBROUGH, III,

    Plaintiff,

v.                                        CAUSE NO. 3:18CV887-PPS/MGG

JOSEPH THOMPSON, et al.,

    Defendants.

OPINION AND ORDER

John Wesley Kimbrough, III, a prisoner without a lawyer, filed a motion to amend his complaint. I will permit the amendment, although a motion was not necessary because, pursuant to Federal Rule of Civil Procedure 15(a)(1)(B), Kimbrough may amend his complaint once as a matter of course.

Kimbrough's amended complaint names numerous individuals as defendants, all relating to the medical care received while incarcerated at the Indiana State Prison. Pursuant to 28 U.S.C. § 1915A, I must review the complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A. Courts apply the same standard under Section 1915A as when deciding a motion under Federal Rule of Civil Procedure 12(b)(6). *Lagerstrom v. Kingston*, 463 F.3d 621, 624 (7th Cir. 2006). In deciding whether the complaint states a claim, I must bear in mind that "[a] document filed *pro se* is to be liberally construed, and a *pro se* complaint, however

inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Here, Kimbrough's amended complaint exceeds 200 pages. In a nutshell, his amended complaint alleges that he began noticing blood in his stool in August of 2015, that he has received inadequate medical care for his condition, and that each of the defendants named in this complaint played a role in him receiving inadequate care.

Kimbrough told a member of the medical staff about his rectal bleeding during a visit on March 6, 2017. (ECF 16-1 at 7.) Stool samples were analyzed and blood was drawn. (*Id.* at 7-8.) On an unknown date, Kimbrough saw Dr. Thompson and he confirmed that occult blood was found in the stool samples. (*Id.* at 8.) Several months went by, and on September 27, 2017, Kimbrough saw Dr. Thompson again. (*Id.*) Dr. Thompson performed a rectal exam and identified blood, but he did not feel any lumps or nodules. (*Id.* at 9.) Dr. Thompson requested a colonoscopy for Kimbrough. (*Id.*) More blood work was done in October. (*Id.*) In November, Kimbrough learned that the Regional Medical Director had denied Dr. Thompson's request for a colonoscopy. (*Id.*) Instead, the Regional Medical Director, Dr. Carl Kuenzli, instructed that Kimbrough should be given anti-hemorrhoid suppositories and monitored. (*Id.*) More blood work was done and more stool samples were collected. (*Id.* at 10.)

In February of 2018, Kimbrough saw Dr. Nancy Marthakis for the first time. (*Id.*) Dr. Marthakis told Kimbrough that his latest stool samples were positive for occult blood. (*Id.*) She wanted to do a rectal exam, but Kimbrough refused because one had already been performed on September 27, 2017. (*Id.*) Dr. Marthakis told him that she

wanted him to use suppositories and hemorrhoid cream, even though Dr. Thompson found no signs of hemorrhoids. (*Id.*) Kimbrough expressed concern about taking drugs without a sure diagnosis, and he asked if there was a way to find out for sure what was wrong. (*Id.*) She said "yeah, a colonoscopy," but she would not request one for Kimbrough. (*Id.*)

Kimbrough saw Dr. Marthakis again on March 29, 2018. (*Id.* at 13.) During this visit, Kimbrough tried to ask a question about his lab results, but the doctor interrupted and became confrontational. (*Id.*) Kimbrough shared that his reading suggested that he had a serious medical emergency, but Dr. Marthakis ignored him and indicated that she wanted to do a rectal exam. (*Id.* at 13-14.) He reminded her that they talked about this before – he already had a rectal exam and no internal or external hemorrhoids were detected. (*Id.* at 14.) Dr. Marthakis told Kimbrough that the visit was over because he refused treatment. (*Id.*) Kimbrough indicated that he was not refusing treatment and that he needed to tell her about his stomach pain, but the doctor reiterated that he refused treatment and the visit was over.[1] (*Id.*)

On May 25, 2018, Kimbrough saw Dr. Marthakis and she again wanted to perform a rectal exam. (*Id.* at 28.) Kimbrough consented to the exam because he did not want her to have a reason to deny him adequate medical care. (*Id.*) The exam was

---

[1] Kimbrough explains in his complaint that, as a Hebrew Israelite, he views a rectal examination performed by a medical provider to diagnose a medical condition as an act of sodomy. (ECF 16-1 at 14-15.) While he consented to the rectal exam by Dr. Thompson, it did not get him the medical care he needed, so he did not wish to submit to another exam, especially where the examiner was hostile toward him. (*Id.*) Kimbrough does not indicate that he expressed concern that the proposed exam would violate his religion. Without notice of the nature of his objection to the exam, this cannot state a claim.

3

performed in a violent manner. (*Id.*) Dr. Marthakis identified blood, but she did not find hemorrhoids. (*Id.* at 28-29.) Nonetheless, she again wanted to prescribe hemorrhoid cream. (*Id.*) She again denied Kimbrough's request that she order a colonoscopy. (*Id.* at 29.)

On June 7, 2018, Kimbrough was so weak that he was taken to the medical department in a wheelchair. (*Id.*) He was unable to see Dr. Marthakis because she was in a meeting, but a nurse relayed that Dr. Marthakis said that they were going to schedule him for an outside hospital visit for further testing in a few days. (*Id.* at 34.) That testing never occurred. (*Id.*)

On June 12, 2018, a nurse brought Kimbrough an iron pill. (*Id.* at 37.) He had never been told that he needed iron or that he was anemic. (*Id.*) He later learned that the Regional Medical Director (Rebecca Hess) ordered the iron pills. (*Id.* at 38.) Dr. Marthakis indicated that the iron pills were the only treatment he would be receiving at that time. (*Id.*) A nurse that was present reviewed Kimbrough's latest labs and told Kimbrough he was anemic. (*Id.*) Kimbrough was told that normal iron levels are between 60 and 170, and his iron level was 36. (*Id.*) He was told to take the iron and that they would check his blood in a month to see if his levels had normalized. (*Id.* at 38-39*)*

On June 29, 2018, Kimbrough had an appointment with Dr. Marthakis. (*Id.* at 45.) Dr. Marthakis told him that she "had a conference call with some people" regarding his health and "she was instructed to only give [Kimbrough] iron pills and more Pepcid." (*Id.*) She further indicated that "she was doing everything she could to build a case for [Kimbrough] to go to the outside hospital but 'they' just want her to monitor [him]."

4

(*Id.*) Dr. Marthakis asked about the effectiveness of the hemorrhoid cream and suppositories, and Kimbrough told her that they were not effective. (*Id.*) He also told her that Dr. Thompson had prescribed hemorrhoid suppositories once before and they did not work. (*Id.*) Dr. Marthakis then said, "I know you're not going to like this but, I want to do another rectal exam to prove to 'them' that this treatment of hemorrhoid cream and suppositories are not working." (*Id.*) He submitted to the exam, and it was again performed in a violent manner. (*Id.* at 46.) Once again, blood was present. (*Id.*) When Kimbrough asked if he was scheduled to go to the hospital, Dr. Marthakis said that he was not - "all she can do is try to build a stronger case for 'them' to approve [him] to go to the hospital." (*Id.*) Dr. Marthakis prescribed fiber pills and Zantac. (*Id.* at 47.) Kimbrough's complaint does not report that he has received any additional medical care between June and the filing of his complaint on October 31, 2018.

Kimbrough has named fourteen defendants in his complaint: Dr. Joseph Thompson, Corizon, Wexford of Indiana, LLC, Dr. Nancy Marthakis, Susan E. Jones, Sherri Fritter, Rebecca Hess, Nikki Tafoya, William Van Ness, Mark Newkirk, Joshua Wallen, Dr. Carl Kuenzli, Commissioner Robert Carter, and Warden Ron Neal. He seeks injunctive relief in the form of additional medical care and a soy-free diet.[2] He also seeks compensatory and punitive damages.

---

[2] When Kimbrough initially noticed blood in his stool, he experimented with his diet and believed that soy was contributing to his condition. (ECF 16-1 at 6-7.) He requested a soy-free diet, but his request was denied because special diets must be ordered by a medical provider. (*Id.* at 85; ECF 13-2 at 157.) There is no indication that he addressed his concern to a member of the medical staff, or that any medical defendant named here is responsible for his request being denied. Accordingly, this does not state a claim and I will not address it further.

5

Under the Eighth Amendment, inmates are entitled to adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability, a prisoner must satisfy both objective and subjective components by showing that: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). On the subjective prong, the plaintiff must establish that the defendant "acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005).

For a medical professional to be held liable for deliberate indifference to an inmate's medical needs, he or she must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). Although the Eighth Amendment does not entitle an inmate to a specific form of treatment, prison medical staff cannot simply continue with a course of treatment that is known to be ineffective. *Greeno*, 414 F.3d at 654-55. Furthermore, a delay in providing treatment can constitute

deliberate indifference when it causes unnecessary pain. *Arnett v. Webster*, 658 F.3d 742, 752-53 (7th Cir. 2011); *Grieveson v. Anderson,* 538 F.3d 763, 779 (7th Cir. 2008).

Here, Kimbrough alleges that Dr. Thompson, Dr. Marthakis, Regional Medical Director Rebecca Hess, and Regional Medical Director Dr. Carl Kuenzli provided constitutionally inadequate medical care for his serious medical condition. (ECF 16-1 at 99-108, 113-14, 125-27.) More specifically, he alleges that he needs a colonoscopy and/or other testing to determine the cause of his rectal bleeding, so that his condition can be properly addressed, and that each of them is responsible for him being denied appropriate care for his condition. Although further factual development may show that the doctors were justified in their actions, it is too early to tell at this point. Giving him the inferences to which he is entitled at the pleading stage, I find that Kimbrough has alleged enough to proceed on his Eighth Amendment claims against Dr. Thompson, Dr. Marthakis,[3] Regional Medical Director Rebecca Hess, and Regional Medical Director Dr. Carl Kuenzli.

Next, Kimbrough asserts that Susan Jones, MA, interfered with his medical treatment in violation of the Eighth Amendment by destroying stool samples. (*Id.* at

---

[3]Kimbrough also alleges that Dr. Marthakis retaliated against him for filing a grievance by forcing him to sign a statement indicating he had refused medical care when he refused to submit to a rectal exam and, when he later consented to two rectal exams, by performing those exams in a violent manner. (ECF 16-1 at 101-108.) However, proceeding on different constitutional theories based on the same facts is redundant. *See Williams v. Sn*yder, 150 F. App'x 549, 552 (7th Cir. 2005) ("The remainder of Williams's substantive legal theories . . . warrant little discussion [b]ecause they all involve the same set of facts . . . they would be redundant even if we found that he stated a claim.); *Conyers v. Abitz*, 416 F.3d 580, 586 (7th Cir. 2005) (dismissing claims based on same circumstances because the claim "gains nothing by attracting additional constitutional labels."); and *Graham v. Connor*, 490 U.S. 386, 395 (1989) (analyzing allegations under the most "explicit source[s] of constitutional protection."). Here, the most explicit constitutional protection is the Eighth Amendment.

108-09.) In support of this claim, Kimbrough alleges that, in March of 2018, Kimbrough submitted additional stool samples to the medical department without being directed to do so and without using a collection container issued by the medical department. (*Id.* at 12-13, 144-45.) Jones was angry and threw the samples away without examining them or submitting them for analysis. (*Id.* at 12-13.) Jones told Kimbrough not to submit samples in this way again, provided him with a stool collection cup, and threatened to throw the collection cup away if he filled it up to the top. (*Id.*; ECF 13-2 at 92.) When Jones destroyed Kimbrough's stool samples, it had already been determined that Kimbrough had blood in his stools. Therefore, Jones' actions were not the cause of Kimbrough not receiving adequate medical care, and I will not permit Kimbrough to proceed on this claim.

Kimbrough filed a grievance against Jones, and he alleges that she threw additional stool samples away in retaliation for filing that grievance. (ECF 16-1 at 13, 108-09.) "To prevail on his First Amendment retaliation claim, [Kimbrough] must show that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendants' decision to take the retaliatory action." *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012) (quotation marks and citations omitted). Giving Kimbrough the benefit of the doubt at this point, it is plausible to infer that Jones was motivated by retaliatory intent when she threw away the stool samples after Kimbrough filed his grievance against her. Therefore, this claim will go forward against Jones.

8

Kimbrough also sues Health Services Administrator Sherri Fritter because she failed to ensure that administrative policies and procedures pertaining to health care services were upheld, resulting in him receiving constitutionally inadequate care. (ECF 16-1 at 110-12.) According to IDOC policy, the physicians at ISP were to "report administratively to the Health Services Administrator." (*Id.* at 110.) On May 22, 2018, Kimbrough saw Fritter because he needed to sign a medical release form. (*Id.* at 27.) Fritter indicated that she did not know anything about his medical situation, so he provided her with a copy of his affidavit documenting his situation. (*Id*.) While Fritter was aware of Kimbrough's complaints, she was not directly involved in Kimbrough's care. A lawsuit against an individual pursuant to § 1983 requires "personal involvement in the alleged constitutional deprivation to support a viable claim." *Palmer v. Marion Cty.*, 327 F.3d 588, 594 (7th Cir. 2003). Merely writing a supervisor is not sufficient to make that person liable, and neither is providing a copy of an affidavit documenting his complaints. *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009). Therefore, I cannot permit Kimbrough to proceed against Sherri Fritter.

Similarly, Kimbrough alleges that Dr. William Van Ness (the Chief Medical Officer), Commissioner Robert Carter, and Warden Ron Neal failed to ensure that he received adequate medical care. (ECF 16-1 at 115-16, 124-25, 132-33.) Dr. Van Ness was aware of Kimbrough's complaints because Kimbrough filed a grievance against him. (*Id.* at 116, 173.) Commissioner Carter and Warden Neal were aware of Kimbrough's complaints because a member of the Indiana State House of Representatives reached out to them to request an investigation into Kimbrough's complaints. (*Id.* at 125, 132-33.)

Although Dr. Van Ness, Commissioner Carter, and Warden Neal were aware of Kimbrough's situation, they were not personally involved in treating him. Therefore, I cannot allow Kimbrough to proceed against Dr. Van Ness, Commissioner Carter, or Warden Neal in their individual capacities. I will, however, permit Kimbrough to proceed against Warden Neal in his official capacity for injunctive relief because he has both the authority and the responsibility to ensure that Kimbrough receives medical treatment to which he is entitled under the Eighth Amendment.

Kimbrough filed numerous grievances against several of the defendants named here, and he has sued Nikki Tafoya (Quality Assurance Manager and Offender Grievance Manager), Mark Newkirk (Executive Assistant), and Joshua Wallen (Grievance Specialist) for failing to conduct a proper investigation into his grievances. (*Id.* at 116, 123.) But, "the alleged mishandling of [a prisoner's] grievances by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). Accordingly, I cannot permit Kimbrough to proceed against these defendants.

Lastly, Kimbrough names Corizon and Wexford of Indiana, LLC as defendants, but Corizon and Wexford cannot be held liable for damages under § 1983 unless a policy or custom caused the alleged constitutional violation. *Monell v. Dept. of Social Services*, 436 U.S. 658, 694 (1978); *Rice v. Corr. Med. Servs.*, 675 F.3d 650, 675 (7th Cir. 2012) (*Monell* framework applies to private company providing medical care at correctional facility). Kimbrough alleges that both Wexford and Corizon have policies of denying necessary medical care to inmates to save money, and that he received

constitutionally inadequate care as a result of these policies. (ECF 16-1 at 127-31.) I will permit Kimbrough to proceed on these claims. However, Corizon is no longer the health care provider at Indiana State Prison, so Kimbrough may seek compensatory and punitive damages from Corizon, but Corizon is not in a position to provide him with additional medical treatment at this time. [https://www.in.gov/dwd/files/Corizon%-20Health%20%20Statewide%20WARN%20notice.pdf](https://www.in.gov/dwd/files/Corizon%-20Health%20%20Statewide%20WARN%20notice.pdf) (last visited Dec. 6, 2018).

Kimbrough has also filed a motion seeking the appointment of counsel to represent him. That motion will be granted by separate order to be issued shortly.

ACCORDINGLY, the court:

(1) DENIES John Wesley Kimbrough, III's Motion to Amend Complaint (ECF 16) as MOOT;

(2) DIRECTS the clerk to file John Wesley Kimbrough, III's proposed amended complaint (ECF 16-1, 16-2);

(3) GRANTS John Wesley Kimbrough, III leave to proceed against Dr. Joseph Thompson, Dr. Nancy Marthakis, Dr. Rebecca Hess, and Dr. Carl Kuenzli in their individual capacities for compensatory and punitive damages for denying him adequate medical treatment for his rectal bleeding, in violation of the Eighth Amendment;

(4) GRANTS John Wesley Kimbrough, III leave to proceed against Dr. Nancy Marthakis, Dr. Rebecca Hess, and Warden Ron Neal in their official capacities for injunctive relief to provide him with adequate medical treatment for his rectal bleeding as required by the Eighth Amendment;

11

(5) GRANTS John Wesley Kimbrough, III leave to proceed against Corizon for compensatory and punitive damages for following a policy of denying necessary medical care that resulted in him receiving constitutionally inadequate care for his rectal bleeding, in violation of the Eighth Amendment;

(6) GRANTS John Wesley Kimbrough, III leave to proceed against Wexford of Indiana, LLC for compensatory and punitive damages for following a policy of denying necessary medical care that resulted in him receiving constitutionally inadequate care for his rectal bleeding, in violation of the Eighth Amendment;

(7) GRANTS John Wesley Kimbrough's leave to proceed against Susan Jones in her individual capacity for compensatory and punitive damages for First Amendment retaliation;

(8) GRANTS John Wesley Kimbrough, III leave to proceed against Wexford of Indiana, LLC for injunctive relief to provide him with adequate medical treatment for his rectal bleeding as required by the Eighth Amendment;

(9) DISMISSES any and all other claims in the complaint;

(10) DISMISSES Sherri Fritter, Nikki Tafoya, William Van Ness, Mark Newkirk, Joshua Wallen, and Robert Carter as defendants;

(11) DIRECTS the clerk and the United States Marshals Service, pursuant to 28 U.S.C. § 1915(d), to issue and serve process, along with a copy of the amended complaint, the motion for preliminary injunction (ECF 5), and this order, on Dr. Joseph Thompson and Dr. Carl Kuenzli at their last known address since they are no longer employed with either Corizon or Wexford of Indiana, LLC;

(12) DIRECTS the clerk and the United States Marshals Service, pursuant to 28 U.S.C. § 1915(d), to issue and serve process, along with a copy of the amended complaint, the motion for preliminary injunction (ECF 5), and this order, on Dr. Nancy Marthakis, Dr. Rebecca Hess, Susan Jones and Warden Ron Neal at the Indiana Department of Correction;

(13) DIRECTS the clerk and the United States Marshals Service, pursuant to 28 U.S.C. § 1915(d), to issue and serve process, along with a copy of the amended complaint, the motion for preliminary injunction (ECF 5), and this order, on Corizon at 103 Powell Court, Brentwood, TN 37027;

(14) DIRECTS the clerk and the United States Marshals Service, pursuant to 28 U.S.C. § 1915(d), to issue and serve process, along with a copy of the amended complaint, the motion for preliminary injunction (ECF 5), and this order, on Wexford of Indiana, LLC, at 9245 N. Meridian Street, Indianapolis, IN 46260; and

(15) ORDERS, pursuant to 42 U.S.C. § 1997e(g)(2), that Dr. Joseph Thompson, Dr. Nancy Marthakis, Dr. Rebecca Hess, Dr. Carl Kuenzli, Warden Ron Neal, Susan Jones, Corizon, and Wexford of Indiana, LLC, respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on December 18, 2018.

    /s/ Philip P. Simon
JUDGE
UNITED STATES DISTRICT COURT